226 November 14, 2024 No. 821

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of L. F. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

D. W. M.,
*Appellant.*

Lane County Circuit Court
21JU00505; A183941

Amit K. Kapoor, Judge.

Submitted October 4, 2024.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Holly Telerant, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

In this juvenile dependency case, father appeals from the judgment changing the permanency plan for his child, L, from reunification to permanent guardianship. Father challenges the juvenile court's determination that his progress toward reunification was insufficient and asserts that the juvenile court improperly relied on facts extrinsic to the jurisdictional basis in concluding that he had made insufficient progress. We conclude that the trial court did not err and affirm.

Neither party has requested *de novo* review, and this is not the type of "exceptional" case that would warrant it. *See* ORAP 5.40(8)(c). In the absence of *de novo* review, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit" the permanency plan change. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

When the permanency plan at the time of a permanency hearing is reunification, the juvenile court can change the plan only if the Department of Human Services (DHS) proves that "(1) it made reasonable efforts to make it possible for the child to be reunified with his or her parent and (2) notwithstanding those efforts, the parent's progress was insufficient to make reunification possible." *Dept. of Human Services v. S. M. H.*, 283 Or App 295, 305, 388 P3d 1204 (2017). Whether a parent's progress was sufficient is "evaluated by reference to the facts that formed the bases for [the] juvenile court" asserting jurisdiction. *Dept. of Human Services v. N. T.*, 247 Or App 706, 715, 271 P3d 143 (2012).

L was removed from father's care in January 2021 following L presenting with injuries to his hands, back, and buttocks from being physically punished by father. Father was convicted of criminal mistreatment and placed on probation. The juvenile court took jurisdiction over L on a single admitted basis: "Father knowingly caused physical injury to the child, which presents a threat of harm. The father has been criminally convicted as a result of his conduct. The

father needs the assistance of the court and DHS to safely parent the child."[1] Father was ordered to participate in and successfully complete a number of programs, including parent training, a comprehensive psychological evaluation, counseling and mental health services, and batterer's intervention counseling, as well as participate in therapeutic services with L as recommended by L's therapist and comply with all terms of his probation.

Father completed each of the required programs and engaged in some mental health treatment. L was returned to his care for a few months at the end of 2022 with L's paternal grandmother serving as an in-home safety service provider. However, L was again removed in January 2023 due to concerns of mental, emotional, and physical abuse, based on reports of father yelling at and mocking L, chasing him through the house, and using power and control over grandmother.

Following the permanency hearing in October 2023, the juvenile court concluded that DHS made reasonable efforts toward reunification, but that father had not made sufficient progress, and L could not be safely returned to his care. The court therefore changed the permanency plan to permanent guardianship, with the intent that L's paternal grandfather serve as the guardian.

Father asserts on appeal that DHS failed to meet its burden to prove that his progress was insufficient to make reunification possible. He argues that the fact that he had ongoing conflict with his partner and his mother does not prove that he had failed to ameliorate the risk of criminal behavior or physical harm to L, as described in the adjudicated basis for jurisdiction. Father further asserts that the court erred in relying on evidence of his contentious relationships with other adults because those facts are extrinsic to the adjudicated basis, and he otherwise completed all programs that were required of him.

We first conclude that the court did not improperly rely on facts extrinsic to the adjudicated basis. "In

---

[1] The court also took jurisdiction over L with respect to mother on four additional bases. Mother has been absent from L's life for a number of years and is not a party to this appeal.

determining whether a parent was on notice that his or her progress would be assessed based upon particular facts, we look to the petition, the jurisdictional judgment, and documentation attached to the jurisdictional judgment providing the parent notice as to the conditions for reunification." *Dept. of Human Services v. C. E.*, 288 Or App 649, 656-57, 406 P3d 211 (2017). In order to determine whether the facts that the juvenile court relied upon were fairly implied by the jurisdictional judgment, "we assess whether a reasonable parent would have known that he or she 'needed to address the condition or circumstances exemplified by those facts.'" *Id.* at 657 (quoting *Dept. of Human Services v. T. L.*, 287 Or App 753, 763, 403 P3d 488 (2017)).

Father admitted to the jurisdictional basis of having caused physical injury to L and, significant to this appeal, needing "the assistance of the court and DHS to safely parent." The dependency judgment required father to, among other things, successfully complete and demonstrate learned skills from a parent training program, engage in mental health services, and complete batterer's intervention counseling and demonstrate a "violence-free lifestyle."

Here, father's anger and impulse control issues are fairly implied by the jurisdictional basis of his admitted need for assistance from the court and DHS to safely parent L. In light of the jurisdictional allegation that father needed assistance to safely parent L and the jurisdictional judgment's requirement that father learn parenting skills and demonstrate a violence-free lifestyle, the court's consideration of father's anger and aggressive behavior towards the other adults in the household was not extrinsic to the adjudicated basis of father needing the assistance of the court and DHS to safely parent L.

We also conclude that legally sufficient evidence supported the juvenile court's determination that father's progress was insufficient. The record contains evidence that father continues to struggle with anger and volatility, supporting the juvenile court's determination that father's progress toward reunification—namely to safely parent the child without the assistance of the court or DHS—was insufficient. In addition to the evidence of father's ongoing

volatility with the adults around him, a psychological evaluator opined that father's anger creates an escalated risk of harm to others, including and especially children, and recommended against reunification based on his intermittently aggressive behavior and inability to accept that change was needed. A psychological evaluation of L also recommended against reunification due to the detrimental impact on L. L's therapist discontinued family therapy due to father's manipulative and controlling behavior, commenting that it made the relationship emotionally and mentally dangerous for L. There was evidence from which the trial court could conclude that father had not made sufficient progress and that a change in plan to permanent guardianship was warranted.

Affirmed.